United States District Court
Southern District of Texas
ENTERED
SEP 17 1998
Michael N. Milby, Clerk of Court
By Deputy Clerk

United States District Court
Southern District of Texas
FILED
SEP 11 1998
Michael N. Milby, Clerk of Court

44

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **TIG INSURANCE COMPANY** for and on behalf of **DREW WOODS, INC.,** A Texas Corporation, | § § § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. B-97-187 |
| **UNITED STATES FIRE INSURANCE COMPANY,** A Corporation and **TRANSCONTINENTAL INSURANCE COMPANY,** A Corporation, | § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

BE IT REMEMBERED that on the 13th day of August 1998, came on for consideration the Motions for Summary Judgment filed by United States Fire Insurance Company ("U.S. Fire") and Transcontinental Insurance Company ("Transcontinental"), as well as the Cross-Motion for Partial Summary Judgment filed by TIG Insurance Company ("TIG"). The Court, after reviewing the summary judgment evidence and hearing argument of the parties, enters the following Findings of Fact and Conclusions of Law:

I. **Findings of Fact**

1. In December 1987, Drew Woods, Inc. ("Woods") installed an 8,000-gallon underground storage tank ("UST") at Valley Baptist Medical Center ("Valley Baptist"), adjacent to two existing UST's, pursuant to a subcontract it had entered into with the general contractor, McCarthy Brothers Company ("McCarthy").

2. Woods, at all relevant times, was incorporated under the laws of Texas and had its principal place of business in Texas.

3. Woods obtained a performance bond for this project from TIG.

4. Woods also installed two leak detection observation wells on each of the three USTs.

5. Woods allegedly punctured the middle existing UST while installing the observation wells at some time in January 1988.

6. Valley Baptist used the USTs to store diesel fuel for Valley Baptist's emergency generators.

7. Woods completed its work and left the Valley Baptist site in February 1988.

8. In September 1988, Valley Baptist had over 15,000 gallons of diesel fuel pumped into the USTs in anticipation of Hurricane Gilbert.

9. Valley Baptist did not have any more fuel added to the USTs until July 1991.

10. In July 1991, a pressure test was conducted, which indicated a possible leak.

11. On or about July 22, 1991, Valley Baptist discovered that the middle UST was punctured, causing the fuel to flow out of the UST.

12. On July 22, 1991, Valley Baptist determined that the soil was contaminated with diesel fuel from the UST.

13. Valley Baptist did not discover any leak, contamination, or other property damage prior to July 22, 1991.

14. On July 15, 1993, Valley Baptist sued Woods, McCarthy, and the architect on the project for negligently causing the destruction of the middle UST and diesel fuel contamination of its property. The lawsuit was filed in the 107th District Court of Cameron

County, Texas, styled *Valley Baptist Medical Center v. McCarthy Brothers Company, Drew Woods, Inc., and Page Southerland Page;* Cause No. 93-07-2979-A ("underlying lawsuit").

15. In its First Amended Petition, Valley Baptist alleged:

> In the summer of 1991, VBMC, in response to anticipated regulations requiring proof of financial responsibility for owners of underground storage tanks, undertook to test the underground storage tanks. These tests were conducted by Tanknology, Inc., in July, 1991. As part of the testing procedures, additional diesel fuel was delivered to the tank. After attempting to test the integrity of the tanks, it was discovered that the center tank had been punctured and that diesel fuel had flowed out of the tank. Since the tanks were underground, VBMC did not discover, nor in the exercise of reasonable care could it have discovered, that the underground storage tank had been damaged, thereby leaking diesel product, until on or about July 22, 1991.

16. On December 30, 1996, McCarthy, Woods, and Page filed a motion for summary judgment in the underlying lawsuit on the basis that Valley Baptist's claims were barred by the two-year and four-year limitations period because the underground storage tanks were filled in September 1988 by Valley Baptist, and leaking should have been detected at that time. Valley Baptist's response to Defendants' motion for summary judgment admitted the original puncture occurred in January 1988, but that it was not discoverable until July 22, 1991, after the tanks failed a "tightness test."

17. U.S. Fire issued a commercial general liability policy (number 541-005687-9) to Woods as the named insured for the period April 1, 1987 through March 31, 1988 ("U.S. Fire Policy").

18. U.S. Fire, at all relevant times, was incorporated under the laws of New York and had its principal place of business in New Jersey.

19. Transcontinental issued a commercial general liability policy to Woods (number FTE 500911092) for the period April 1, 1988 through April 1, 1989 ("Transcontinental Policy").

20. Transcontinental, at all relevant times, was incorporated under the laws of New York and had its principal place of business in Illinois.

21. The Transcontinental Policy provides:

> Transcontinental will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory."
>
> * * *
>
> "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.
>
> * * *
>
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> "Property damage" means: Physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured.

22. The U.S. Fire Policy provides:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
>
> > A. bodily injury or
> > B. property damage
>
> to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.
>
> * * *
>
> "property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
>
> * * *
>
> "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

23. The U.S. Fire Policy also states that the Policy does not apply:

> (1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; . . . (a) at or from

premises owned, rented or occupied by the named insured.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This language is known as the "absolute pollution exclusion".

24. The Transcontinental policy contains a non-assignment clause which states the following:

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

25. Transcontinental did not provide Woods with written consent to transfer or assign its rights and duties under the policy to TIG.

26. TIG, at all relevant times, was incorporated under the laws of California and had its principal place of business in Texas.

27. On July 25, 1997, TIG filed suit against U.S. Fire and Transcontinental in the 357th District Court of Cameron County, Texas, Cause No. 97-07-5259-E, alleging breach of contract, violation of the Texas Deceptive Trade Practices Act, violation of Articles 21.21 and 21.55 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. TIG is proceeding as subrogee of Woods.

28. U.S. Fire and Transcontinental filed their Notice of Removal with this Court on August 25, 1997.

29.     TIG has voluntarily dismissed its common law duty of good faith and fair dealing claim against U.S. Fire and Transcontinental.

## II.     Conclusions of Law

1.      This Court has original jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity of citizenship.

2.      U.S. Fire and Transcontinental are entitled to summary judgment as a matter of law as there are no genuine issues of material fact which would preclude summary judgment.

3.      Under the terms of the U.S. Fire Policy and the Transcontinental Policy, U.S. Fire and Transcontinental agreed to cover bodily injury or property damage that occurred during the relevant policy period.

4.      A policy is not triggered by the underlying property damage claim unless the harm became apparent or manifested during the policy period.

5.      Valley Baptist's response that it did not discover, nor in the exercise of reasonable diligence could it have discovered, the damage until July 22, 1991 is a judicial admission.

6.      There was no manifestation of property damage within either the U.S. Fire Policy or the Transcontinental Policy time periods. Therefore, there was no occurrence under either the U.S. Fire Policy or the Transcontinental Policy.

7.      TIG's claims are excluded under the absolute pollution exclusion in the U.S. Fire Policy that precludes coverage for environmental contamination.

8.      The site at issue was contaminated with diesel fuel discharged, dispersed, released, or escaped from the middle UST.

9.  Diesel fuel is a pollutant as defined by the U.S. Fire Policy because it is a liquid contaminant.

10. Woods occupied the Valley Baptist premises where it performed work as a subcontractor.

11. Transcontinental is not liable for damages asserted by TIG by virtue of any assignment of interest from Woods, on the basis that such transfer is invalid.

12. Under Texas law there is no common law duty of good faith and fair dealing in handling third-party insurance claims, therefore, neither U.S. Fire nor Transcontinental are liable for any extra-contractual claims alleged by TIG. *Maryland Ins. v. Head Indus.*, 938 S.W.2d 27 (Tex. 1996).

13. TIG cannot pursue its statutory bad faith claims against either U.S. Fire or Transcontinental because it is a third-party claimant.

14. Damages stemming from a breach of implied warranty fall outside the specific policy provisions limiting payment to "damages because of 'bodily injury' or 'property damage'" as those terms are defined in the Transcontinental Policy. TIG cannot recover on behalf of Woods in connection with a cause of action against Transcontinental for breach of an implied warranty as a matter of law.

15. TIG had no contract with Transcontinental, therefore, TIG lacks standing and cannot recover for extra-contractual damages, if any, based on a breach of the duty and good faith and fair dealing. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F3d 256, 262 (5th Cir. 1995) (quoting *Natividad v. Aexsis, Inc.*, 875 S.W.2d 695, 697 (Tex. 1994).

16. Neither U.S. Fire nor Transcontinental had a duty to defend or indemnify TIG or Woods.

17. Any conclusion of law that constitutes a finding of fact is adopted as such, and any finding of fact that constitutes a conclusion of law is adopted as such.

DONE at Brownsville, Texas, this _11_ day of September 1998.

_____
Hilda G. Tagle
United States District Judge